# UNITED STATES DISTRICT COURT
# DISTRICT OF RHODE ISLAND

| | |
|---|---|
| COMMERCE AND INDUSTRY INSURANCE COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> RHODE ISLAND AIRPORT CORPORATION, DANIEL D. TRAFICANTE, SHARON M. TRAFICANTE, AND CAROLYN SCIRE, <br><br> Defendants. | Case No.: 1:21-cv-466 |

## COMMERCE AND INDUSTRY INSURANCE COMPANY'S COMPLAINT FOR DECLARATORY RELIEF

Plaintiff Commerce and Industry Insurance Company ("Commerce"), by and through its attorneys, brings this Complaint for Declaratory Relief against Defendant Rhode Island Airport Corporation ("RIAC"), and against Defendants Daniel D. Traficante ("Mr. Traficante") and Sharon M. Traficante ("Mrs. Traficante") (the "Traficantes") and Carolyn Scire ("Ms. Scire") (the Traficantes and Ms. Scire are collectively the "Underlying Plaintiffs"), but solely in the Underlying Plaintiffs' capacity as interested parties, and states as follows:

## NATURE AND BACKGROUND OF THE ACTION

1.  This is an insurance coverage action. This Complaint for Declaratory Relief, filed pursuant to 28 U.S.C. § 2201, is brought to determine Commerce's obligations to RIAC under Aviation Commercial General Liability Policy No. AP 003791836-55 for the period June 30, 2013 to June 30, 2016[1] (the "Policy") in connection with two separate litigations commenced by the Underlying Plaintiffs against RIAC and Southwest Airlines Co. ("Southwest") in Kent

---

[1] Endorsement No. 60 of the Policy, the Multiple Year Policy Premium Endorsement, extends coverage from June 30, 2015, to June 30, 2016.

County Superior Court, State of Rhode Island, titled *Daniel D. Traficante et al. v. Rhode Island Airport Corporation and Southwest Airlines Co.*, Civil Action No. KC-2017-0411 and *Carolyn Scire v. Rhode Island Airport Corporation and Southwest Airlines Co.*, Civil Action No. KC-2017-0412, respectively (collectively the "Underlying Actions").

2. On or about April 24, 2017, the Underlying Plaintiffs commenced the Underlying Actions against RIAC and Southwest alleging that, on July 1, 2015, while working as Transportation Security Administration ("TSA") employees at the T.F. Green Airport, they suffered injuries resulting from exposure to carbon monoxide fumes from the operation of an air start unit by Southwest.

3. On or about April 25, 2017, RIAC submitted the Underlying Actions to Commerce for coverage under the Policy. In a position letter dated May 10, 2017, Commerce advised RIAC that it would provide a defense of the Underlying Actions, subject to a reservation of rights. Specifically, Commerce advised RIAC that the Policy's Noise And Pollution And Other Perils Exclusion Clause provides that the Policy "does not cover claims directly or indirectly occasioned by, happening through or in consequence of: … (2) pollution and contamination of any kind whatsoever ..." and that, therefore, the Pollution Exclusion may apply to exclude coverage for the Underlying Actions by the Traficantes and Ms. Scire  (The Policy's Noise And Pollution And Other Perils Exclusion Clause is hereinafter referred to as the "Pollution and Contamination Exclusion").

4. Upon information and belief, prior to the July 1, 2015 incident that is the subject of the Underlying Actions, RIAC had purchased a separate claims made Premises Environmental Liability Insurance policy (the "Pollution Policy") from another insurer ("the pollution insurer") unrelated to Commerce.

5. Upon information and belief, after the July 1, 2015 incident, RIAC renewed the Pollution Policy, which had an effective date of June 30, 2016.

6. Upon information and belief, at some time after the July 1, 2015 incident and the commencement of the Underlying Actions, RIAC sought a defense and indemnity of the Underlying Actions under the Pollution Policy, which provides coverage for, *inter alia*, a monetary judgment, award or settlement and related legal expenses because of a "pollution condition" on, at, under, or migrating from a covered location, which RIAC becomes legally obligated to pay. A "pollution condition" is "the discharge, dispersal, release, seepage, migration, or escape of POLLUTANTS into or upon land or structures thereupon, the atmosphere, or any watercourse or body of water including ground water…." and "pollutants" are "any solid, liquid, gaseous, or thermal pollutant, irritant, or contaminant, including but not limited to smoke, vapors, odors, soot, fumes …, hazardous substances …."

7. Upon information and belief, the pollution insurer confirmed to RIAC that, *inter alia*, the alleged presence of carbon monoxide which released into the air qualifies as a "Pollution Condition" under the Pollution Policy and that the alleged bodily injury by Mr. Traficante and Ms. Scire were caused by a "Pollution Condition" and therefore that coverage would apply.

8. Upon information and belief, the pollution insurer subsequently revoked its prior determination of coverage and denied coverage for the Underlying Actions after discovering that RIAC had knowledge of the incident prior to renewing the Pollution Policy and failed to disclose the Pollution Condition to the pollution insurer prior to the beginning of the policy period.

9. A consolidated trial of the Underlying Actions commenced on September 27, 2021. The jury found no liability on the part of Southwest. Against RIAC, the jury awarded $4 million for bodily injury to Mr. Traficante, $8 million for pain and suffering to Mr. Traficante, $4 million for bodily injury to Ms. Scire and $8 million to her for pain and suffering. The jury also awarded $2.5 million in lost consortium for Mrs. Traficante. Thus, the total damages awarded in these consolidated cases was $26.5 million.

10. Commerce provided RIAC with a defense through trial and continues to provide RIAC with a defense with respect to post-trial motions and appeals.

11. Commerce seeks a judgment declaring, *inter alia*, that, due to the applicability of the Pollution and Contamination Exclusion, the Policy does not afford insurance coverage, either defense or indemnity, for the claims, causes of action, and damages which are the subject of the Underlying Actions, that Commerce may discontinue and withdraw its defense of RIAC in the Underlying Actions, that Commerce is not obligated to pay the judgments rendered in the Underlying Actions, and that Commerce is entitled to reimbursement for the supersedeas (appeal) bond it has furnished on behalf of RIAC for RIAC's appeal.

## THE PARTIES

12. Plaintiff, Commerce, is a New York corporation with its principal place of business in New York, New York.

13. Defendant, RIAC, is a quasi-public corporation that is a semi-autonomous subsidiary public corporation of the Rhode Island Commerce Corporation, in accordance with G.L. 1956 § 42-64-7.1(b) and (h). RIAC is charged with the responsibility to manage all publicly owned airport facilities in Rhode Island, including T.F. Green Airport where the incident that is the subject of the Underlying Actions occurred.

14. Upon information and belief, the Traficantes are residents and citizens of Rhode Island. The Traficantes have an interest in this declaratory judgment action to the extent this action seeks a judgment declaring that the Policy does not afford indemnity coverage with respect to the verdict rendered in favor of the Traficantes, or any further or different relief that may be granted to the Traficantes as a result of the post-trial motions and/or any appeal. Accordingly, the Traficantes are defendants in this action solely in their capacity as interested parties.

15. Upon information and belief, Ms. Scire is a resident and citizen of Rhode Island. Ms. Scire has an interest in this declaratory judgment action to the extent this action seeks a judgment declaring that the Policy does not afford indemnity coverage with respect to the verdict rendered in favor of Ms. Scire, or any further or different relief that may be granted to Ms. Scire as a result of the post-trial motions and/or any appeal. Accordingly, Ms. Scire is a defendant in this action solely in her capacity as an interested party.

## JURISDICTION AND VENUE

16. This action seeks declaratory judgment pursuant to 28 U.S.C. § 2201.

17. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000.00, exclusive of costs.

18. This Court has personal jurisdiction over RIAC because RIAC is a governmental agency and public instrumentality of the state of Rhode Island and has the power "[t]o sue and be sued, complain and defend, in its corporate name." 42 R.I. Gen. Laws 1956 Ann. § 42-64-6(a)(1) (West).

19. This Court has jurisdiction over Defendants Mr. and Mrs. Traficante because, upon information and belief, they are residents and citizens of the State of Rhode Island.

20. This Court has jurisdiction over Defendant Ms. Scire because, upon information and belief, she is a resident and citizen of the State of Rhode Island.

21. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred or is occurring within the District of Rhode Island and/or under 28 U.S.C. § 1391(b)(1) since RIAC, the Traficantes, and Ms. Scire are all residents of the State of Rhode Island and reside within the District of Rhode Island.

22. There is a real, substantial, and justiciable issue in controversy between the parties hereto with respect to the existence of insurance coverage available to RIAC for the claims asserted and the verdicts rendered in the Underlying Actions brought by the Traficantes and Ms. Scire.

23. A judicial determination and a declaration of the rights and obligations of Commerce is necessary in order to resolve the Parties' dispute regarding coverage. A declaratory judgment is appropriate at this time because Commerce has no adequate remedy at law that will resolve the current controversy.

## THE POLICY

24. Commerce issued Aviation Commercial General Liability Policy No. AP 003791836-55 to RIAC for the period June 30, 2013 to June 30, 2016. A true redacted copy of the Policy with Endorsements 1-41, 48-49, and 60 is attached hereto as **Exhibit "A"**.

25. The Policy states that "the words 'you' and 'your' refer to the Named Insured shown in the Declarations and any other person or organization qualifying as a Named Insured under this Policy. The words 'we', 'us' and 'our' refer to the company providing this insurance."

26. The Policy provides, in relevant part, the following coverage grant for "bodily injury" and "property damage" liability:

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies resulting from your "aviation operations". We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

        (1) The amount we will pay for damages is limited as described in Section III - Limits Of Insurance; and

        (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages A, B and D.

    b. This insurance applies to "bodily injury" and "property damage" only if:

        (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        (2) The "bodily injury" or "property damage" occurs during the policy period; ….

*   *   *

27. The Policy contains the following definitions relevant to Coverage A in the instant action:

**SECTION V – DEFINITIONS**

\* \* \*

5. "Aviation operations"[2] means all operations arising from the ownership, maintenance or use of locations for aviation activities including that portion of roads or other accesses that adjoin these locations.

   a. "Aviation operations" includes all operations necessary or incidental to aviation activities ….

\* \* \*

6. "Bodily injury"[3] means bodily injury, sickness, mental anguish or disease sustained by a person, including death resulting from any of these at any time.

\* \* \*

17. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\* \* \*

28.   The Policy provides, in relevant part, the following Common Policy Exclusions:

\* \* \*

**NOISE AND POLLUTION AND OTHER PERILS EXCLUSION CLAUSE[4]**

1. This policy does not cover claims directly or indirectly occasioned by, happening through or in consequence of:

\* \* \*

   (b)   pollution and contamination of any kind whatsoever, . . .

\* \* \*

unless caused by or resulting in a crash, fire explosion or collision of aircraft or a recorded in-flight emergency causing abnormal aircraft operation.

\* \* \*

---

[2] As amended by Endorsement No. 6, Aviation Operations Definition Endorsement.
[3] As amended by Endorsement No. 2, Amendment of Bodily Injury Definition.
[4] As amended by Endorsement No. 17, Noise and Pollution and Other Perils Exclusion AVN46B.

## THE UNDERLYING ACTIONS

29. This declaratory relief action arises out of an insurance coverage dispute between Commerce and RIAC as to whether Commerce had and/or has a duty to defend and/or indemnify RIAC in the Underlying Actions, including post-trial motions and on appeal, and should a new trial be ordered.

30. Daniel Traficante and his wife, Sharon, and Carolyn Scire commenced the Underlying Actions in the Kent County Superior Court of the State of Rhode Island on or about April 24, 2017, naming as defendants RIAC and Southwest. On or about February 14, 2018, the Underlying Plaintiffs filed Amended Complaints in their respective actions. Subsequently, on or about April 7, 2020, they each filed a Second Amended Complaint (the "Traficante SAC" and the "Scire SAC", respectively, and collectively, the "SACs"). The Traficante SAC and Scire SAC are the current operative pleadings, and attached hereto, collectively, as **Exhibit "B"**.

31. As alleged in the SACs, at all relevant times, Mr. Traficante and Ms. Scire were employees of the TSA assigned to the T.F. Green Airport (the "Airport").

32. In connection with Count I – Negligence against RIAC, the Underlying Plaintiffs allege that RIAC owned and operated the Airport and "owed a legal duty to exercise reasonable care in its activities attendant to its ownership, operation, and maintenance" of the Airport, but breached that duty with respect to Mr. Traficante and Ms. Scire "and was negligent by failing to exercise reasonable care in the operation and maintenance of [the Airport] including, but not limited to, the operation of all machinery and equipment on the premises and by failing to maintain the premises of [the Airport] in a reasonably safe and danger-free condition."

33. The Underlying Plaintiffs further allege that on or about July 1, 2015, Mr. Traficante and Ms. Scire were "exposed to and injured by carbon monoxide gas" while working

at the Airport as a result of RIAC's negligence. It is further claimed that they were "in the exercise of reasonable care for [their] own safety and well-being."

34. As a "direct and proximate result" of RIAC's negligence, the Underlying Plaintiffs allege that Mr. Traficante and Ms. Scire were "severely and permanently injured" and Ms. Traficante suffered a loss of consortium due to injuries suffered by Mr. Traficante.

35. In Count II for premises liability against RIAC, the Underlying Plaintiffs allege that Mr. Traficante and Ms. Scire were employees of the TSA assigned to the Airport and "an invitee on the premises" of the Airport and that RIAC "owed a legal duty to exercise reasonable care in seeing that the premises of [the Airport] was free from dangerous conditions or defects that might cause injury to those who enter upon the property; to use reasonable care in inspecting the premises so as to discover dangerous conditions or defects; and to use reasonable care to cure or remedy those conditions so that the premises are made safe."

36. The Underlying Plaintiffs contend that RIAC breached these legal duties when Mr. Traficante and Ms. Scire were "exposed to and injured by a dangerous condition or defect existing at the premises" on July 1, 2015, and as a "direct and proximate result" of RIAC's negligence, they were "severely and permanently injured" and Ms. Traficante suffered a loss of consortium due to injuries suffered by Mr. Traficante.

37. In Count III of the SACs, the Underlying Plaintiffs allege negligence against Southwest. Specifically, the Underlying Plaintiffs contend that Southwest "was operating a commercial airline business" at the Airport and "had a legal duty to exercise reasonable care in its activities attendant to the operation of its commercial airline business."

38. According to the SACs, "[a]t the time of the subject incident, a Southwest Airlines passenger jet was located at or near Gate 17 at [the Airport] being prepared for departure

(the "Southwest aircraft"). The Underlying Plaintiffs allege, upon information and belief, that: (1) "the Southwest aircraft required the use and operation of an air start unit and other mechanical equipment to prepare for departure"; (2) "the air start unit and other mechanical equipment was operated and/or utilized by Southwest Airlines in advance of the Southwest aircraft's departure"; and (3) "the air start unit and other mechanical equipment was being operated by and being utilized for the Southwest aircraft at or near Gate 17 at [the Airport] and emitted carbon monoxide gas, which entered the facility and premises, thereby injuring" Mr. Traficante and Ms. Scire.

39. Accordingly, the Underlying Plaintiffs contend that Southwest breached the duty of care owed to Mr. Traficante and Ms. Scire "and was negligent by failing to exercise reasonable care in the operation and maintenance of its equipment and aircraft, thereby creating a dangerous condition in the vicinity of its aircraft and the airport premises", and "[a]s a direct and proximate result of the negligence of Southwest", Mr. Traficante and Ms. Scire were "severely and permanently injured" and Ms. Traficante suffered a loss of consortium due to injuries suffered by Mr. Traficante.

40. The Underlying Plaintiffs also bring a count of negligence against an "ABC Corporation", which they allege, upon information and belief "was a participant and/or otherwise involved in the design, construction, alterations, and/or renovations of the subject TSA space" at the Airport.

41. The Underlying Plaintiffs sought compensatory damages, plus interest and costs.

42. RIAC asserted a cross-claim for indemnification against Southwest pursuant to the indemnification provision (Provision 12.03) in the Airline Operating Agreement between

RIAC and Southwest. Provision 12.03 provides that SWA would not be responsible for any injury if the loss were caused by the sole negligence or willful misconduct of RIAC.

43. The Underlying Actions proceeded to a jury trial which resulted in jury verdicts against RIAC (with no fault allocated to Southwest) and in favor of the Traficantes and Ms. Scire, respectively. On or about October 27, 2021, judgment was entered in each of the Underlying Actions against RIAC and in favor of the Traficantes in the amount of $14,500,000, with interest thereon at the rate of 12% as provided by law in the amount of $10,875,000, for a total judgment of $25,375,000 and in favor of Ms. Scire in the amount of $12,000,000 with interest thereon at the rate of 12% as provided by law in the amount of $9,000,000, for a total judgment amount of $21,000,000. A true and correct copy of the Judgments in the Underlying Actions are attached hereto collectively as **Exhibit "C"**.

44. On or about November 5, 2021, RIAC filed a motion for a new trial on damages or, in the alternative, a remittitur regarding the jury verdict and judgments. Thereafter, on or about November 8, 2021, RIAC filed a motion for a new trial "based on the Court's errors of law regarding the admission of evidence regarding § 4.06 of RIAC's Lease with GSA and the Court's limiting instruction after RIAC's closing argument."

45. On or about November 16, 2021, RIAC filed Notices of Appeals in both Underlying Actions. Commerce put up the supersedeas bond and RIAC moved the Court to approve the bond and stay enforcement of the judgments.

**THE POLICY DOES NOT AFFORD COVERAGE FOR THE UNDERLYING ACTIONS**

46. There is no coverage under the Policy for the claims, causes of action, liabilities, and damages which are the subject of the Underlying Actions.

47. The Underlying Actions complain that Mr. Traficante and Ms. Scire suffered bodily injuries while working as TSA employees at the T.F. Green Airport due to exposure to carbon monoxide fumes, which originated from an air start unit owned and operated by Southwest outside and traveled into the facility where they worked.

48. Carbon monoxide is a pollutant and/or contaminant within the meaning of the Policy's Pollution and Contamination Exclusion.

49. The Underlying Plaintiff's claims, and the verdicts rendered in the Underlying Actions, directly result from the exposure of Mr. Traficante and Ms. Scire to carbon monoxide.

50. While the Underlying Plaintiffs' claims fall within the Policy's Coverage A Bodily Injury and Property Damage Liability coverage, the Policy's Pollution and Contamination Exclusion, which provides that the Policy "does not cover claims directly or indirectly occasioned by, happening through or in consequence of: … (2) pollution and contamination of any kind whatsoever …", applies to the Underlying Actions.

51. Because the Pollution and Contamination Exclusion applies to the claims asserted by the Underlying Plaintiffs against RIAC in the Underlying Actions, there is no coverage available to RIAC for the Underlying Actions under Coverage A.

52. Commerce has expended significant sums in defending RIAC in the Underlying Actions and will continue to expend significant sums on post-judgment motions as well as appeal. However, Commerce has no duty to defend or indemnify RIAC in the Underlying Actions or on appeal (or any new trials) and is entitled to reimbursement of the supersedeas bond it furnished.

## COUNT I – DECLARATORY JUDGMENT
## NO DEFENSE OR INDEMNITY OWED UNDER THE POLICY

53.	Commerce repeats and reiterates each and every allegation made in paragraphs 1 through 52 as if fully set forth herein.

54.	Commerce reserved its rights to disclaim coverage for the Underlying Actions on various grounds based on the terms, conditions, and exclusions of the Policy, including without limitation, that there is no coverage for the claims in the Underlying Actions by application of the Policy's Pollution and Contamination Exclusion.

55.	The Policy explicitly provides that Commerce "will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply."

56.	The Policy also explicitly provides that Commerce's duty to indemnify RIAC is limited to "to those sums that [RIAC] becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' *to which this insurance applies* …." (Emphasis added).

57.	The Underlying Plaintiffs' claims in the Underlying Actions fall squarely within the Policy's Pollution and Contamination Exclusion.

58.	Accordingly, under the terms, conditions, and exclusions of the Policy, Commerce is therefore entitled to a declaration that has no duty to defend or indemnify RIAC with respect to the Underlying Actions, including the verdicts, and that therefore Commerce may discontinue and withdraw its defense of RIAC in the Underlying Actions, specifically, but not limited to, post-trial motions and any appeals or new trials. Commerce is also entitled to reimbursement of the supersedeas bond it furnished.

59. By reason of the foregoing, an actual and justiciable controversy exists between the Parties. Commerce therefore seeks a declaratory judgment regarding the Parties' respective rights and obligations under the Policy.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Commerce prays for judgment in its favor and against all Defendants, as follows:

A. Declaring the Parties' rights and obligations under the Policy;

B. Declaring that Commerce owes no duty under the Policy to defend, pay defense costs, or indemnify RIAC from any claims, liabilities, causes of action, or damages which are the subject of the Underlying Actions;

C. Declaring that Commerce may withdraw its defense of RIAC in the Underlying Actions, including, but not limited to, all post-trial motions and appeals;

D. Declaring that Commerce is entitled to reimbursement of the supersedeas bond it furnished; and

E. Awarding such other and further relief as the Court may consider equitable, fair and proper.

Dated: November 23, 2021

                                                CETRULO LLP

By:   /s/ Andrew R. McConville
      Andrew R. McConville
      Rhode Island Bar No. 8180
      Bryan M. Abramoske
      Rhode Island Bar No. 9866
      The Heritage Building
      321 South Main Street, 5th Floor
      Providence, Rhode Island 02903-7114
      Tel:    (401) 274-7850
      Fax:   (401) 274-9670
      amcconville@cetllp.com
      babramoske@cetllp.com

SKARZYNSKI, MARICK & BLACK LLP

By:   /s/ Andrew T. Houghton

      Andrew T. Houghton (*pro hac vice application to be filed*)
      New York State Bar No. 2288116
      Karen Schnur (*pro hac vice application to be filed*)
      New York State Bar No. 5090170
      One Battery Park Plaza, Fl. 32
      New York, New York 10004
      Tel:    (212) 820-7700
      Fax:   (212) 820-7740
      Email:   ahoughton@skarzynski.com
                 kschnur@skarzynski.com

*Attorneys for Plaintiff Commerce and Industry Insurance Company*